Vincent R. LITTLE, Sr., Plaintiff-Respondent-Cross-Appellant,

v.

ROUNDY'S, INC., Defendant-Appellant-Cross-Respondent.

Court of Appeals

*No. 89–0086. Submitted on briefs September 5, 1989.—Decided October 25, 1989.*

(Also reported in 449 N.W.2d 78.)

For the defendant-appellant-cross-respondent the cause was submitted on the briefs of *Peterson, Johnson & Murray, S.C.,* with *Donald R. Peterson, Janet E. Cain,* and *Judith A. Pinchar* of counsel, of Milwaukee.

For the plaintiff-respondent-cross-appellant the cause was submitted on the briefs of *Fox, Carpenter, O'Neill & Shannon, S.C.,* with *Bruce C. O'Neill* and *William R. Soderstrom* of counsel, of Milwaukee.

Before Moser, P.J., Sullivan and Scott, JJ.

SULLIVAN, J.   Roundy's, Inc. (Roundy's) appeals from a judgment awarding damages to Vincent R. Little, Sr. for the breach of his deferred-compensation employment contract. On appeal, Roundy's argues that Little's employment contract was void as against public policy or because it contains an *in terrorem* agreement. Roundy's also argues that the trial court erred in determining that the contract was not procured by fraud. Little cross-appeals the trial court's denial of prejudgment interest. We conclude that the trial court properly determined that Little's employment contract was valid and enforceable and that it was not procured by fraud. On the cross-appeal, we conclude that the trial court failed to exercise its discretion in denying Little recovery of prejudgment interest and that such an award is proper in this case. Therefore, we affirm in part, reverse in part, and remand this case to the trial court.

## THE CONTRACT

Roundy's, a cooperative food wholesaler, employed Little as its president and chief executive officer from 1973 until Little's discharge in 1986. At the time of his discharge, Little was working under a written employment contract with Roundy's which contained the following provision:

> Termination. The Corporation shall have the right to discharge Mr. Little, at any time, with or

717

without cause upon sixty (60) days prior written notice to Mr. Little.

Regardless of whether such discharge is with or without cause, Mr. Little shall be entitled to receive the compensation he is then receiving under paragraph 5 hereof to the remainder of the term of this Employment Agreement.

If such discharge is without cause, Mr. Little shall be entitled to receive the compensation he is then receiving under paragraph 5 hereof to the remainder of the term of this Employment Agreement and the special termination benefit provided for under paragraph 11 hereof.

If such discharge is for cause, meaning a material breach by Mr. Little of the duties and responsibilities required of him under this Agreement, Mr. Little shall receive his compensation under paragraph 5 for the term of this Agreement as provided, but shall not receive the special termination benefit provided under paragraph 11 hereof.

In the event Mr. Little voluntarily terminates his employment with the Corporation, all the obligations of the Corporation to Mr. Little and all rights and benefits of Mr. Little, his wife, his widow or his designated beneficiary under this Agreement shall immediately cease.

Little brought suit against Roundy's to enforce his employment contract. The trial court found that Roundy's had breached the contract and awarded damages to Little.

On appeal, Roundy's argues that the contract is void as against public policy or because the provision set forth above is an *in terrorem* provision. The jury, whose findings are not questioned by the parties, found that Little breached his fiduciary duty to Roundy's and was discharged for cause. Roundy's argues that an employee

discharged for cause loses any right to compensation. Roundy's cites several cases in support of this proposition. However, none of these cases involve a written contract which specifically provides for compensation after termination for cause.[1]

Roundy's also argues that Little's employment contract was against public policy because it compensates Little after his fiduciary breach, and, therefore, is promotive of dishonesty and disloyalty. Given the factual background of this case, we disagree.

In its decision, the circuit court noted that the post-breach compensation to Little is supported by consideration in the form of an agreement not to compete and a consultation agreement. Furthermore, the breach is separately penalized by loss of a termination benefit.[2] The circuit court noted the circumstances surrounding execution of the contract. The record shows that Little has been in the grocery business since age 14 when he bagged groceries and swept floors at Kroger's in Little Rock, Arkansas. He moved up the management ladder at various grocery houses until he started at Roundy's in 1968 as vice-president of retail sales. He became president in 1973 when the former Roundy's president died. Little's

---

[1]Roundy's cites *Hartford Elevator, Inc. v. Lauer,* 94 Wis. 2d 571, 289 N.W.2d 280 (1980), for the "general rule" that "an agent who is dishonest in the performance of his duties forfeits the right to compensation." *Id.* at 580, 289 N.W.2d at 285. However, in *Hartford,* the supreme court expressly declined to adopt this "rigid, mechanical rule," *id.* at 585, 289 N.W.2d at 287, and concluded that "whether the agent should be denied all or any part of his compensation during the period in which he breached his duty of loyalty depends on consideration and evaluation of all the circumstances . . .." *Id.* at 586, 289 N.W.2d at 287.

[2]The special termination benefit forfeited by Little because of his breach and termination from Roundy's was $244,000.

presidency was marked by an enormous increase in sales, in market share, in market expansion, and in shareholder equity.[3] This was caused by Little's innovation, a warehouse-type of retailing which substantially reduced operating costs. These savings were, in part, passed on to customers who, Little testified, came in "droves."

Little did not have a written contract with Roundy's until 1979. Some time around 1978, several other grocery companies offered Little executive positions. In 1979, Kohl's Foods offered him a presidency at treble the $110,000 annual salary he was earning at Roundy's. Little reported these communications to Roundy's executive committee. He told the committee that he required a contract which would provide security for him and his family to retirement.[4] Ultimately the parties executed the contract of August 27, 1980. It provided for Little's employment to June 30, 1986, with the right of either party to extend for one year. The board, in successive years after 1980, extended the contract to June 30, 1991. Roundy's discharged Little in February, 1986.

Upon this factual backdrop we confirm the trial court's conclusion that the contract did not violate public policy. We also conclude that the contract, which addressed Little's employment and retirement concerns and which imposed continuing duties upon him to consult and not to compete, was valid. Roundy's has enjoyed the benefit of Little's non-employment by Kohl's or other competitors.

Relying on *Wassenaar v. Panos*, 111 Wis. 2d 518, 528-29, 331 N.W.2d 357, 361-62 (1983), Roundy's also

---

[3]In 1968, Roundy's gross sales were $65 million; in 1985, the last year of Little's presidency, they were slightly under $2 billion.

[4]Little was approaching retirement age. His date of birth is February 27, 1926.

argues that the stipulated damages clause providing Little with $200,000 per year compensation after discharge for breach is an *in terrorem* provision and unenforceable. Roundy's equates Little's $200,000 annual compensation with a stipulated damages clause, and argues it exceeds any injury he could suffer from a discharge. Furthermore, Roundy's argues that the provision was in the nature of a threat or punishment because Little would receive it whether or not he was discharged. *Wassenaar v. Panos* imposed a duty upon the court to respect the parties' bargain but prevent abuse, 111 Wis. 2d at 529, 331 N.W.2d at 362. To prevent abuse, Roundy's insists that this court must declare the provision void as an *in terrorem* provision.

■ The trial court concluded that the post-termination payments were in the nature of deferred compensation and considered Little's ongoing agreement not to compete. The parties did not intend the payments as an equivalent of damages or as a penalty. We conclude, considering the relationship of the parties and the unambiguous language of the termination provision, that the trial court did not err in upholding it. It mandates not only continued payments by Roundy's, but continued performance by Little. On its face, the contract did not involve a stipulated damages clause or an *in terrorem* provision.

## FRAUD

Before the trial court, Roundy's argued that Little's employment contract was void because it was procured by fraud. The trial court found specifically that Roundy's did not enter into the contract based on any misrepresentations on the part of Little. On appeal,

Roundy's argues that this issue should have been submitted to the jury and that the trial court erred in deciding "as a matter of law" that the contract was not procured by fraud.

Little counters this argument by asserting that the trial court did not "direct a verdict" on this issue, but only exercised its obligation by sitting as the trier of fact on this equitable issue. We agree. An action to rescind a contract is equitable in nature. *See, e.g., Berlinski v. Telisky,* 39 Wis. 2d 191, 158 N.W.2d 925 (1968) (involving an action to rescind a deed). Equitable claims are properly determined by the trial court. "The right to trial by jury . . . does not extend to 'equity cases, in which the party has never been held entitled to jury trial as a matter of right.' " *Spensley Feeds, Inc. v. Livingston Feed & Lumber, Inc.,* 128 Wis. 2d 279, 288, 381 N.W.2d 601, 605 (Ct. App. 1985) (*quoting Stilwell v. Kellogg,* 14 Wis. 499 [*461], 503 [*464] [1861]). This is true even where an equitable claim is voluntarily joined with a legal claim. *See Stuart v. Stuart,* 140 Wis. 2d 455, 466, 410 N.W.2d 632, 637 (Ct. App. 1987), *aff'd,* 143 Wis. 2d 347, 421 N.W.2d 505 (1988). Thus, Roundy's claim for rescission of the employment contract was properly determined by the trial court. Since Roundy's does not challenge the factual underpinnings of the trial court's holding, we need not address this issue further.

## THE CROSS-APPEAL

Little's cross-appeal seeks interest on prejudgment salary payments due under the contract. The parties agree that this is a matter of trial court discretion. *See Estreen v. Bluhm,* 79 Wis. 2d 142, 156, 255 N.W.2d 473, 481 (1977). His amended complaint demanded interest,

and in a brief filed with the trial court in support of his proposed order for judgment, Little argued for interest on payments as they became due. However, the trial court's finding and judgment were silent on the matter of interest.

The Wisconsin supreme court has long included prejudgment interest as part of liquidated damages on liquidated claims. *Laycock v. Parker,* 103 Wis. 161, 186, 79 N.W. 327, 335 (1899). Liquidated damages consist of an amount due which "can be determined by mere mathematical calculation." *E.D. Wesley Co. v. City of New Berlin,* 62 Wis. 2d 668, 676, 215 N.W.2d 657, 662 (1974).

Roundy's argues that the amount due was not liquidated because a dispute existed arising from the denial of the underlying claim. We reject Roundy's position. The question is whether the amount of the claim is liquidated, not whether the cause of action is disputed.

> This court has long sought to steer between Scylla and Charybdis in determining whether and when interest is to be payable on a contract claim brought to court. The Scylla is the danger of encouraging plaintiffs to overstate claims as a bargaining device for pretrial negotiations. The Charybdis is the danger of encouraging defendants to understate liability on clearly due and payable claims in order to create a bargaining leverage as to such claims or as to other claims made. If all that is required is the fact of dispute or disagreement as to amount due, it is obvious that the effort has been unrewarding, and the mere fact of the amount being disputed would take away the right to interest, even as to items clearly established by trial proceedings to have been entirely due and clearly payable without resort to litigation.

*Dahl v. Housing Auth. of the City of Madison,* 54 Wis. 2d 22, 30, 194 N.W.2d 618, 622 (1972); *see Nelson v. Travelers Ins. Co.,* 102 Wis. 2d 159, 170, 306 N.W.2d 71, 77 (1981) ("A dispute as to a defendant's liability has never been recognized as a bar to the payment of interest.").

Because the trial court failed to exercise its discretion in this matter, we owe it no deference. *McCleary v. State,* 49 Wis. 2d 263, 277–78, 182 N.W.2d 512, 519–20 (1971). Little is entitled to prejudgment interest because the amount of damages was fixed under the terms of the contract. Therefore, we reverse on this issue and remand with instructions for the trial court to award Little interest pursuant to sec. 138.04, Stats., on the amount due but unpaid under the employment agreement prior to the date of judgment.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded with directions.