Richard H. Driehaus, Plaintiff-Appellant,

v.

Walworth County, Wisconsin and Walworth
County Board of Adjustment,
Defendants-Respondents,

Rudolph Rasin, Joy Rasin and Town of Linn,
Intervening-Parties-Respondents.

Court of Appeals

*No. 2008AP947. Submitted on briefs January 8, 2009.
—Decided April 1, 2009.*

2009 WI App 63

(Also reported in 767 N.W.2d 343.)

734

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Edward F. Thompson* of *Clair Law Offices, S.C.*, Delavan and *Maureen A. McGinnity* of *Foley & Lardner, LLP*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James P. Martin* of *James P. Martin, S.C.*, Lake Geneva.

On behalf of the intervening parties-respondents, the cause was submitted on the brief of *Michael J. Frazier* of *Godfrey, Leibsle, Backbourn & Howarth, S.C.*, Elkhorn.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. SNYDER, J. Richard H. Driehaus appeals from an order denying his writ of certiorari petition that a zoning variance decision of the Walworth County Board of Adjustment (the Board) be reversed. Driehaus contends that the Board applied an incorrect theory of law, exceeded its jurisdiction, and arbitrarily determined that his request for an area variance to a sideyard setback should be denied. Driehaus also argues that his right to due process was violated when a judicial rotation placed his petition for writ of certiorari before a new judge without notice to the parties. We affirm the order of the circuit court.

## BACKGROUND

¶ 2. The historical facts of this case can be traced back nearly a decade.[1] Driehaus owns more than seventeen acres of property, with over six hundred feet of frontage on Geneva Lake. The property is zoned C-2, Upland Resource Conservation District. Three primary

---

[1] The history is set forth in *Rasin v. Walworth County*, No. 2002AP2561, unpublished slip op. (WI App June 4, 2003).

structures are located on the Driehaus property: a principal residence, a secondary residence and an eight-car garage. The garage was built in 1906. The west side of the garage is located less than three feet from the shared boundary line between Driehaus and property owned by Rudolph and Joy Rasin. The Walworth County Shoreland Zoning Ordinance (shoreland ordinance) requires a twenty-foot minimum sideyard setback for all dwellings in a C-2 zoning district. *See* Walworth County, Wis., Code § 74–179(4) (Oct. 14, 2008).[2]

¶ 3.   In 1999, Driehaus applied for a building permit to make certain improvements to the garage and convert the upper portion storage area to a single-family residence. The County issued this building permit on June 8, 1999. After the building permit was approved, the County issued a stopwork order to Driehaus on grounds that conversion of the garage to a single-family residence violated the shoreland ordinance, which allows only one principal structure to be located, erected or moved onto a lot. Driehaus appealed, but because the garage was located near the lot line and about twenty feet from a residence on the neighboring Rasin property, the town plan committee found the setback "acceptable for a garage" but "not for a residence" according to county zoning ordinances. The Board agreed with the committee, holding that no exceptional circumstances or unnecessary hardship would result from denial of the permit.

¶ 4.   Driehaus then filed an application for a zoning permit to "rehab" the existing two-story garage with the Walworth County Department of Planning, Zoning

---

[2] All references to the shoreland ordinance are to the Walworth County, Wis., Code ch. 74., art. 3, enacted October 14, 2008.

and Sanitation, now known as the Department of Land Management (zoning committee) on August 6, 1999. The zoning committee denied this application again; Driehaus appealed and was again unsuccessful.

¶ 5.    On April 5, 2000, Driehaus filed an application with the zoning committee for a conditional use permit (CUP) for a planned residential development.[3] Driehaus filed the application "to facilitate the intended use of the three existing habitable dwellings . . . . [T]he landowner . . . voluntarily requests a restriction that the three lots to be created on his parcel of land must be owned by one common owner and can never be sold separate and apart from each other."

¶ 6.    The zoning committee voted to conditionally approve the CUP; however, one of the conditions imposed was that Driehaus obtain all required zoning permits, including a variance to the twenty foot lineal sideyard setback requirement found in the shoreland ordinance. The zoning committee then decided to hold further proceedings and to make its own decision on the variance and did not refer the matter to the Board. The committee held a hearing on the variance and voted to grant Driehaus a variance to the twenty foot lineal sideyard setback requirement.

¶ 7.    On November 17, 2000, the Rasins filed a declaratory judgment and writ of certiorari petition challenging the zoning committee's decision to grant the variance. After briefing, the circuit court held that no variance was necessary because the garage was an existing substandard structure as that phrase is defined under applicable zoning ordinances and the garage,

---

[3] He subsequently filed an amended conditional use permit application, and it is the amended application that was ultimately considered.

therefore, did not require a variance. The circuit court, therefore, deleted the variance condition from the CUP. The circuit court entered judgment dismissing all of the Rasins' claims.

¶ 8. The Rasins appealed and, in *Rasin v. Walworth County*, No. 2002AP2561, unpublished slip op. (WI App June 4, 2003), we reversed and remanded the matter to the circuit court. We held that the zoning committee had no jurisdiction to hear Driehaus's application for an area variance. *Id.*, ¶ 35. We further concluded that even if the zoning committee did have jurisdiction, Driehaus had failed to establish unnecessary hardship in the absence of a variance. *Id.*

¶ 9. On March 1, 2005, Driehaus submitted his variance request to the Board. The Rasins objected to the variance. On April 14, the Board voted to deny Driehaus' petition for a variance from the sideyard setback requirement. Driehaus petitioned for writ of certiorari, challenging the Board's decision. The case was assigned to the Honorable Michael S. Gibbs. After extensive briefing, the parties, including the Rasins as intervenors, participated in court-ordered mediation. On December 22, 2006, counsel for Driehaus advised the court that he was "hopeful" that the parties would have a signed settlement stipulation in front of the court within thirty days or, at the very least, an update on their progress. As it turned out, no settlement agreement emerged.

¶ 10. On May 31, 2007, Driehaus advised the circuit court that the "parties attempted to settle the dispute, and went through mediation" but were "not . . . able to agree on all of the language to be contained in the terms and conditions of any proposed Settlement Stipulation"; consequently, Driehaus moved for oral argument before the court. The motion hearing took

place on July 25, 2007, where counsel appeared and advised the court that a final settlement was possible, pending approval from Walworth County. The court continued the hearing to September 17th to allow the Board to review and rule on the proposed settlement. While still on the record, Judge Gibbs informed the parties that, due to judicial rotation in August, the case would move to the Honorable Robert J. Kennedy, unless the parties agreed that Judge Gibbs should "hang on to" the case. The parties agreed that the case should stay with Judge Gibbs.

¶ 11. By letter dated January 7, 2008, and addressed to Judge Gibbs, Driehaus explained that the settlement discussions had failed and the parties had "reached an impasse." Driehaus reminded Judge Gibbs that he had "agreed to remain the presiding judge" and asked that the matter be set for oral argument. The letter was first delivered to Judge Kennedy, who noted that it should go to Judge Gibbs as indicated in the letter. Judge Gibbs returned the case to Judge Kennedy, stating that he had agreed to retain the matter only to approve the settlement. On January 17, 2008, Judge Kennedy issued an order denying Driehaus' writ of certiorari request that the Board's decision be reversed.

¶ 12. By letter dated February 20, 2008, Driehaus objected to Judge Kennedy's order. He argued that the parties had agreed that Judge Gibbs would retain the case after judicial rotation and that the parties had received no notice that the matter was now pending before Judge Kennedy. On February 22, 2008, the circuit court, Judge Kennedy presiding, held a hearing to consider Driehaus' motion to vacate the January 17 order. Judge Kennedy denied the motion to vacate his order and transfer the case to Judge Gibbs; however, Judge Kennedy agreed to delay signing the order while

the parties filed a motion before Judge Gibbs. On February 25, Driehaus filed a letter with Judge Gibbs, restating his position that the case was retained by Judge Gibbs and requesting oral argument. Judge Gibbs, through his clerk, advised Driehaus that he could file a motion asking Judge Kennedy to reconsider his order or take the matter up on appeal. The final order, signed by Judge Kennedy, was entered on May 2, 2008. Driehaus appeals.

## DISCUSSION

¶ 13. Driehaus appeals from the order affirming the Board's decision to deny the area variance. When reviewing an administrative agency decision, we review the agency decision itself, not the decision of the circuit court. *Stoughton Trailers, Inc. v. LIRC*, 2007 WI 105, ¶ 26, 303 Wis. 2d 514, 735 N.W.2d 477. The Board's decision is accorded a presumption of correctness and validity. *See State ex rel. Ziervogel v. Washington County Bd. of Adjustment*, 2004 WI 23, ¶ 13, 269 Wis. 2d 549, 676 N.W.2d 401. However, a board must apply the appropriate legal standards and adequately express the reasons for its decision on the record. *See Lamar Cent. Outdoor, Inc. v. Board of Zoning Appeals*, 2005 WI 117, ¶ 4, 284 Wis. 2d 1, 700 N.W.2d 87. Whether the Board acted in excess of its powers, applied an incorrect theory of law, or made an arbitrary, oppressive or unreasonable decision are each questions of law that this court reviews de novo. *See Ziervogel*, 269 Wis. 2d 549, ¶ 14.

¶ 14. Driehaus does not dispute that the Board properly took up the issue of the area variance; rather, he argues that the Board applied the wrong legal rule to

the facts presented. Rather than focus on the dimensional aspects of the variance, he asserts, the Board denied his petition based on the proposed use of the property. He emphasizes that, unlike a use permit, an area variance grants relief from dimensional requirements of an ordinance, such as size, setbacks, height or density. *See Snyder v. Waukesha County Zoning Bd. of Adjustment*, 74 Wis. 2d 468, 475, 247 N.W.2d 98 (1976); *Ziervogel*, 269 Wis. 2d 549, ¶ 21. Thus, he argues, the use analysis must be kept separate from the discussion of setback distance.

¶ 15. Driehaus highlights the division of duties allocated between the zoning committee and the Board. In Walworth County, "[c]onditional uses and their accessory uses shall be permitted in specified districts after review, public hearing, and approval by the committee in accordance with procedures and standards established in . . . this [ordinance]." WALWORTH COUNTY, WIS., CODE § 74–163(3). However, the Board has the power to "hear and authorize appeals for variances where owing to special conditions, a literal enforcement [would] result in practical difficulty or unnecessary hardship." WALWORTH COUNTY, WIS., CODE § 74–240(2). The Board is expressly prohibited from granting use variances. WALWORTH COUNTY, WIS., CODE § 74–240(3); *see also State v. Ozaukee County Bd. of Adjustment*, 152 Wis. 2d 552, 449 N.W.2d 47 (Ct. App. 1989).

¶ 16. Driehaus contends that once the zoning committee decided to grant a conditional use permit, specifically allowing him to use the second floor of the garage as living quarters, the question of use was settled.[4] Thus, when the Board's discussions turned to

---

[4] Driehaus erroneously refers to his CUP as a "use variance." A conditional use is a *permitted* use in a specified zoning

743

the use of the property, it improperly examined legal questions beyond its jurisdiction. The Board, argues Driehaus,

> was limited to considering whether the public interest and purposes underlying the 20–foot sideyard setback requirement outweighed the hardship to Driehaus in not being able to use the garage for a purpose the Zoning Committee already determined was permitted, without moving the historic structure into full compliance with the setback.

¶ 17. However, as *Ziervogel* clearly stated, an area variance cannot be decided in a vacuum. The standard the Board is bound to apply is whether denial of the area variance "would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with [zoning requirements] unnecessarily burdensome." *Ziervogel*, 269 Wis. 2d 549, ¶ 41 (citing *Snyder*, 74 Wis. 2d at 475). The *Ziervogel* court was concerned about undermining the authority of local boards of adjustment by imposing a "no reasonable use" standard on area variance requests. The "no reasonable use" standard, which traditionally applied to use variances rather than area variances, essentially states that "when the record before the Board demonstrates that the property owner would have a reason-

district that may be granted under special circumstances if the use is not harmful, offensive or otherwise adverse to the environment. *See Fabyan v. Waukesha County Bd. of Adjustment*, 2001 WI App 162, ¶ 16, 246 Wis. 2d 851, 632 N.W.2d 116; WALWORTH COUNTY, WIS., CODE § 74–240(3). A variance allows nonconformities that are otherwise *prohibited* by ordinance. *See City of Waukesha v. Town Bd. of Waukesha*, 198 Wis. 2d 592, 603, 543 N.W.2d 515 (Ct. App. 1995). We are unable to locate in the record a "use variance" for the proposed residence above the garage.

able use of his or her property without the variance . . . the variance request should be denied." *State v. Kenosha County Bd. of Adjustment*, 218 Wis. 2d 396, 414, 577 N.W.2d 813 (1998). In *Ziervogel*, the court held that applying the "no reasonable use" test to area variance determinations was inconsistent with the purpose of area zoning. *See Ziervogel*, 269 Wis. 2d 549, ¶ 27 ("*Kenosha County* blurred the distinction between use and area variances, by adopting the 'no reasonable use of property' test from use variance analysis for area variance cases.").

¶ 18.   Driehaus takes the supreme court's rejection of the "no reasonable use" test for area variances and exaggerates it to prohibit any consideration of use whatsoever for area variance determinations. He reads *Ziervogel* too broadly. *Ziervogel* did not state that use cannot be a factor in an area variance analysis; rather, it stated that use cannot "overwhelm[] all other considerations in the analysis, rendering irrelevant any inquiry into the uniqueness of the property, the purpose of the ordinance, and the effect of a variance on the public interest." *Ziervogel*, 269 Wis. 2d 549, ¶ 28. *Ziervogel* returned to the rule that an area variance must be evaluated by asking whether compliance with the zoning ordinance "would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome." *Id.*, ¶ 33 (citing *Snyder*, 74 Wis. 2d at 475). Here, the Board never embraced the "no reasonable use" standard; instead, it properly considered the purpose of the zoning code, the effect on neighboring properties, and the hardship alleged by Driehaus. Furthermore, our review of the record confirms that the Board did not usurp the role of the zoning committee. It did not decide whether the second

floor of the garage could be used as a dwelling. Rather, it decided whether there should be a dwelling two and one-half feet from the lot line. The Board applied the correct legal standard.

¶ 19.   Next, Driehaus argues that he met his burden to show unnecessary hardship and therefore the Board's decision was oppressive and arbitrary. The Board must evaluate hardship in light of the purpose of the shoreland ordinance. *See Ziervogel*, 269 Wis. 2d 549, ¶ 20. The purpose of Walworth County's shoreland ordinance is, in part, to regulate "lot coverage, population density and distribution, and the location and size of all structures within the shoreland areas," and to "[s]tabilize and protect the natural beauty and property values of the county." *See* WALWORTH COUNTY, WIS. CODE § 74–154(2) and (8). The alleged hardship must be unique to the property and must not be self-created. *Ziervogel*, 269 Wis. 2d 549, ¶ 20. The burden of demonstrating unnecessary hardships falls on the property owner. *Id.*

¶ 20.   The zoning committee determined that the residence above the garage met CUP and planned residential development standards; in other words, that the residence would not be harmful to the environment, the residence would not adversely affect property values, and exterior design standards would be maintained. *See* WALWORTH COUNTY, WIS., CODE § 74–186. However, it made clear that Driehaus would have another hurdle to clear before he could maintain a residence on the second floor of the garage. The CUP states in relevant part:

> All residential uses including the garage with living quarters shall constitute principal uses under this

Planned Residential Development (PRD). There are three separate single-family detached dwellings approved by this PRD. Use of the property must be consistent with residential use as specified by the district and general intent of the County Zoning Ordinance.

The applicant must apply for and obtain a variance . . . in order for the dwelling unit within the garage to be located in the 20–foot sideyard setback. The variance must be applied for and obtained within 6 months of this approval. This PRD shall not be valid until such time as a required variance is obtained.

¶ 21.     The matter came before the Board for a hearing on April 13, 2005. There, Driehaus made a comprehensive presentation, emphasizing the historical significance of the garage and why Driehaus should not be forced to move it in order to add the second-floor residence. He summarized the relevant zoning law and gave a history of the use of the building, which he insisted had been used as a dwelling in the past. He exhorted the Board to focus on area dimensions instead of use because use of the second floor of the garage as a dwelling had already been approved as a permitted use by the zoning committee. Others spoke in favor of the area variance, including the Town of Linn chairman, who testified on behalf of the town board and the planning commission. He "strongly encourage[d]" approval of the area variance. Another proponent of the variance, a member of the Wisconsin Trust for Historic Preservation, stated that the organization "respectfully urge[d]" the Board to approve the variance. Two additional letters of support were read into the record. One from the Wisconsin Historical Society and one from a local attorney with several decades of experience in the area of real estate law.

¶ 22. Next, the Board heard from the Rasins' attorney. He emphasized the extent of the variance requested, which would create a setback of two and one-half feet instead of the shoreland ordinance minimum of twenty feet. He further explained that any "hardship" that might exist because Driehaus renovated the second floor to be a residence prior to obtaining the area variance was self-created. He emphasized that Driehaus knew when he purchased the property that it included two residential units and that the garage was just that: "a garage/stable." He noted that if Driehaus desired a third residential unit on his property, he had the ability to pursue a CUP for a new building that would comply with the shoreland ordinance setback requirement. Finally, he explained that none of the opponents of the variance were against the garage remaining where it was as long as it continued to be used as a garage.

¶ 23. Joy Rasin spoke in opposition to the variance and provided a unique historical perspective because she had been raised on the Driehaus property and now owned the neighboring lot. She stated that she had no memory of anyone using the second floor of the garage as a residence; rather, it had been used as a stable in "horse and buggy days," for storage, and for a changing room for employees of the estate. She explained that there is a rental unit, occupied by the McClayton family, on her property near the lot line with the Driehaus property; specifically, near the garage.

¶ 24. Rudolph Rasin also spoke to the Board, summarizing his opposition to the area variance as follows:

> [Driehaus] wants to make a residence 2.5 feet from my lot line when he has an opportunity to build a third

house . . . anywhere he wants to on 17 acres. But no, he's going to put it right next to me. Two and a half feet right next [to] a residence. It's a rental residence, but it's our family home . . . . He doesn't want to build a third house, he wants to build it right where I am.

¶ 25. William McClayton, the renter who has lived in the residence near the Driehaus garage for over ten years, urged the Board to deny the variance and by doing so preserve "the unique historical character of my country residence by preserving the existing zoning and current setback requirements. The existing historic garage/stable/storage . . . should be maintained . . . and not unnecessarily converted and renovated into a new residence near my lot line and in such close proximity to my country residence." McClayton explained that the garage on the Driehaus lot was "[l]ess than 20 feet from my front door," and that the balcony Driehaus had added to the garage is "less than 20 feet from [his daughter's] bedroom." With an unoccupied garage, there are "no lights on at the property . . . no comings and goings . . . none of the attendant noises that you would expect from a residence, a radio, a window opening, people, dogs, children, cats." He described the experience of living where he does by stating, "I have enjoyed the peace, privacy, and tranquility" and he feared that would end if the garage became a residence. Other neighbors wrote letters of opposition, which were read into the record.

¶ 26. The meeting adjourned and the Board reconvened the next day for a decision meeting. The Board voted unanimously to deny the variance.

¶ 27. The *Ziervogel* court emphasized that the purpose of the zoning law, the effect on the property, the effect of a variance on the neighborhood, and the larger public interest should all be considered by the Board.

*See Ziervogel*, 269 Wis. 2d 549, ¶ 33. Here, the Board decision rested on several findings, including: (1) the garage could continue to be used for storage as it has been without a variance, (2) the "hardship" of needing another dwelling was self-created and of a personal nature, (3) the setback requirements were not unnecessarily burdensome to Driehaus' 17.91 acre lakeshore estate, (4) the detriment to the neighboring properties was apparent, and (5) a variance under these facts would undermine the purpose of the zoning law. The Board's findings represent an appropriate application of the law to a reasonable view of the facts, and its decision is neither oppressive nor arbitrary. Accordingly, we will not upset its decision. *See Lamar Cent.*, 284 Wis. 2d 1, ¶ 25 (appellate court will not disturb the board's findings if any reasonable view of the evidence supports them).

¶ 28.  Driehaus' second appellate issue relates to the internal operating procedures of the circuit court, which resulted in the transfer of this case from one judge to another. He contends that Judge Kennedy, who received the case from Judge Gibbs after normal judicial rotation, lacked competency to decide the matter and that lack of notice of the rotation deprived Driehaus of his right to due process.

¶ 29.  Driehaus directs us to Wis. Stat. § 801.58(1) (2007–08)[5] for support. Section 801.58 states in relevant part:

> (1) Any party to a civil action or proceeding may file a written request ... with the clerk of courts for a substitution of a new judge for the judge assigned to the case .... If a new judge is assigned to the trial of a case,

---

[5] All references to the Wisconsin Statutes are to the 2007–08 version.

a request for substitution must be made within 10 days of receipt of notice of assignment, provided that if the notice of assignment is received less than 10 days prior to trial, the request for substitution must be made within 24 hours of receipt of the notice . . . .

(2) When the clerk receives a request for substitution, the clerk shall immediately contact the judge whose substitution has been requested for a determination of whether the request was made timely and in proper form. If the request is found to be timely and in proper form, the judge named in the request has no further jurisdiction and the clerk shall request the assignment of another judge under [WIS. STAT. § 751.03].

¶ 30.  Driehaus argues that he never received actual notice that the judicial rotation had placed this matter before Judge Kennedy, and therefore he was denied his right to substitute under WIS. STAT. § 801.58. The Rasins point out that Driehaus never raised a § 801.58 argument before the circuit court. Despite writing to both judges and filing a motion to be heard before Judge Gibbs, Driehaus never raised § 801.58. Furthermore, the latest date that Driehaus can claim to have received notice that a new judge was assigned was when he received Judge Kennedy's decision dated January 17, 2008. Driehaus first wrote to Judge Kennedy on February 20, 2008, to assert that Judge Gibbs should have kept and decided the matter. In his letter, Driehaus never raised § 801.58 nor could he because he was not "within 10 days of receipt of notice of assignment" as required by the statute. *See* § 801.58(1). We conclude that Driehaus waived this argument.

¶ 31.  Driehaus makes a companion argument that his due process rights were violated when he was denied the right to be heard at oral argument by the

judge of his choice. Due process provides Driehaus with the right to be heard "at a meaningful time and in a meaningful manner." *See Brown County v. Shannon R.*, 2005 WI 160, ¶ 64, 286 Wis. 2d 278, 706 N.W.2d 269 (citation omitted). Here, Driehaus fully briefed his arguments to the court and Judge Kennedy issued a decision based on those arguments. We do not read Driehaus to suggest that Judge Kennedy's decision was tainted by bias or in any other way. Driehaus offers no law in support of his proposition that due process required oral argument before Judge Gibbs. We do not consider arguments unsupported by legal authority. *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

## CONCLUSION

¶ 32. The Board considered the petition for an area variance under the proper legal standard as stated in *Ziervogel*, and its decision reflects a reasoned and reasonable application of that standard to the evidence presented at the hearing. Driehaus waived his argument that his Wis. Stat. § 801.58 right to substitute the circuit court judge, and provides no legal authority for his contention that his right to be heard includes the right to oral argument. For these reasons, we affirm the order of the circuit court.

By the Court.—Order affirmed.