PATIENCE DRAKE ROGGENSACK, C.J.
¶ 82. (dissenting). The Common Council of the City of Green Bay found that representatives of Oneida Seven Generations Corporation misrepresented material facts to the Common Council when it obtained a conditional use permit to construct and operate a biomass gasification facility. On certiorari review, the Common Council's factual findings are sustained if any reasonable view of the evidence supports them. Kapischke v. Cnty. of Walworth, 226 Wis. 2d 320, 328, 595 N.W.2d 42 (Ct. App. 1999). The majority opinion refuses to follow this and other long-established legal principles that apply to certiorari review of a common council decision and thereby errs.
¶ 83. In this regard, the majority opinion did not accord the Common Council's decision the presumption of correctness and validity that the law requires, Driehaus v. Walworth Cnty., 2009 WI App 63, ¶ 13, 317 Wis. 2d 734, 767 N.W.2d 343. Instead, the majority opinion substituted its view of the evidence for that of the Common Council, contrary to law, Clark v. Waupaca Cnty. Bd. of Adjustment, 186 Wis. 2d 300, 305, 519 N.W.2d 782 (Ct. App. 1994).
¶ 84. I conclude Oneida Seven has failed to meet its burden under certiorari review because a reasonable view of the presentations made March 1, 2011, *326 when Oneida Seven obtained the conditional use permit, supports the Common Council's finding that it was misled. Material misrepresentations were made to the Common Council in regard to emissions during operation of the gasification facility and that such a facility was not experimental because solid municipal waste was being used as the feedstock in other gasification facilities.[1] Therefore, I conclude that substantial evidence supports the Common Council's decision to rescind the conditional use permit. Accordingly, I would reverse the court of appeals decision, affirm the circuit court's affirmance of the Common Council decision, and respectfully dissent from the majority opinion.
I. BACKGROUND
¶ 85. This review focuses on the Common Council's October 16, 2012 rescission of the conditional use permit earlier granted to Oneida Seven because the Common Council found that Oneida Seven's representatives had misrepresented material facts to the Common Council when obtaining the conditional use permit. The Common Council found that the misrepresentations raised public health, safety and general welfare concerns in regard to hazardous emissions produced at the facility and in regard to the *327 experimental nature of a pyrolytic gasification facility that would convert municipal solid waste into syngas.[2]
¶ 86. In advance of its March 1, 2011 meeting with the Common Council, Oneida Seven submitted 149 pages of material that discussed various waste-to-energy methods and also provided pictorial representations of the facility it was proposing. Oneida Seven's representatives previously had met with the City of Green Bay's Plan Commission to explain the project.
¶ 87. At the Common Council meeting on March 1, 2011, Oneida Seven's CEO, Kevin Cornelius, and the project manager, Peter King, made representations in support of the conditional use permit. During those presentations when questioned about emissions, Cornelius said, "there are no smoke stacks in it. For those of us here in Green Bay we know what that means." This was an important representation because smoke stacks are used to disburse emissions that are generated by power plants and other businesses.[3] Cornelius's statement was consistent with the drawings and the power point presentation given to the Common Council on March 1, which showed no stacks for the proposed facility.
*328 ¶ 88. Cornelius also represented that the proposed gasification facility was not based on new or experimental technology. He said that a system such as was being proposed for Green Bay was operational in California. He explained that he "looked at it, the fact that it was operating in California, that it was permitted there. When we saw it, we knew it was a good system."
II. DISCUSSION
A. Standard of Review
¶ 89. This case presents to us on certiorari review of the Common Council's decision to rescind a conditional use permit it previously issued. We review the Common Council's decision, not those of courts that have considered the Common Council's decision. Bd. of Regents of the Univ. of Wis. v. Dane Cnty. Bd. of Adjustment, 2000 WI App 211, ¶ 10, 238 Wis. 2d 810, 618 N.W.2d 537. Upon certiorari review, we are limited to deciding whether the Common Council "kept within its jurisdiction, acted according to law, acted arbitrarily or unreasonably, and whether the evidence was such that the [Common Council] might reasonably make the order or determination it made." Cohn v. Town of Randall, 2001 WI App 176, ¶ 25, 247 Wis. 2d 118, 633 N.W.2d 674.
¶ 90. In regard to the Common Council's factual findings, we will not disturb them if any reasonable view of the evidence supports them. Kapischke, 226 Wis. 2d at 328. In our review, we accord the Common Council's decision a presumption of correctness and validity. Driehaus, 317 Wis. 2d 734, ¶ 13.
*329 B. Certiorari Review
¶ 91. Before us, Oneida Seven argues only one component of certiorari review: whether the evidence was such that the Common Council might reasonably find it had been misled when it granted the conditional use permit. In order to prevail, Oneida Seven must prove that under no reasonable view of the evidence presented to the Common Council on March 1, 2011, could the Common Council have been misled.
1. General principles
¶ 92. We review the decision of the Common Council, not that of the Plan Commission. I bring this to the fore because the majority opinion rests its affirmance of the court of appeals on an extensive discussion of the decision of the Plan Commission and how the Plan Commission supported the conditional use permit.[4] However, it is the Common Council, and not the Plan Commission, that has the power to issue and to rescind conditional use permits. See McQuillin Mun. Corp. § 29.120 at 148 (3d ed.); Green Bay, Zoning Code § 13-205(5). The Plan Commission makes recommendations to the Common Council, § 13-205(3), and it may hold public hearings at the direction of the Common Council, id. at (4). However, the Common Council had no obligation to accept the recommendation of the Plan Commission, but rather, the Common Council had an obligation to consider Oneida Seven's request and to make an independent decision on whether to grant the permit. See Town of Brockway v. City of Black River Falls, 2005 WI App 174, ¶ 24, 285 Wis. 2d 708, 702 N.W.2d 418 (concluding that the City *330 was not bound until the common council decided whether to grant its approval).
¶ 93. A conditional use permit is not property; it is a type of zoning designation. Rainbow Springs Golf Co. v. Town of Mukwonago, 2005 WI App 163, ¶¶ 12-13, 284 Wis. 2d 519, 702 N.W.2d 40. As the court of appeals explained, "A zoning designation allows a landowner to use his or her property in certain ways." Id., ¶ 13. Therefore, how the gasification system will operate is material to the conditional use granted to Oneida Seven.
¶ 94. As we consider Oneida Seven's objection to the Common Council's rescission as it attempted to protect the health and safety of Green Bay residents, we must decide whether "taking into account all the evidence in the record, reasonable minds could arrive at the same conclusion as the Common Council," i.e., that it was misled when it granted the conditional use permit. See Smith v. City of Milwaukee, 2014 WI App 95, ¶ 22, 356 Wis. 2d 779, 854 N.W.2d 857 (citation and internal quotation marks omitted); see also Crystal Lake Cheese Factory v. LIRC, 2003 WI 106, ¶ 27, 264 Wis. 2d 200, 664 N.W.2d 651) (explaining that "[t]he reviewing court may not substitute its judgment for that of an agency").
¶ 95. In evaluating the evidence, we give the Common Council's decision a presumption of correctness and validity because doing so "recognizes that locally elected officials are especially attuned to local concerns." Ottman v. Town of Primrose, 2011 WI 18, ¶ 51, 332 Wis. 2d 3, 796 N.W.2d 411. In the case before us, the locally elected Green Bay Common Council was concerned about the health and safety of Green Bay citizens.
*331 ¶ 96. A misrepresentation is a statement of fact. Tietsworth v. Harley-Davidson, Inc., 2000 WI 32, ¶ 13, 270 Wis. 2d 146, 677 N.W.2d 233. Here, we review the Common Council's findings of fact that misrepresentations were made to it when Oneida Seven obtained the conditional use permit. Because a court in certiorari review may not substitute its view of the evidence for that of a common council, we sustain a common council's finding that it was misled unless no reasonable view of the evidence will sustain that finding. Ottman, 332 Wis. 2d 3, ¶ 53.
¶ 97. During certiorari review, we do not evaluate evidence to determine whether it could support Oneida Seven's position. However, that is exactly what the majority opinion has done: it has evaluated evidence to determine whether it could support Oneida Seven's position.
2. Rescission
¶ 98. The Common Council rescinded the conditional use permit because it found that it was misled in regard to the project's effects on "public safety and health."[5] The Common Council's concerns were linked to representations in regard to emissions and in regard to the experimental nature of gasification facilities that use solid municipal waste as the feedstock for energy generation.
¶ 99. Although the Common Council asserts that Oneida Seven misled it when obtaining the conditional use permit, the Common Council does not make a claim for actionable misrepresentation; but rather, the Common Council relies on misrepresentation as the equitable basis for its rescission of the conditional use *332 permit.[6] See Schnuth v. Harrison, 44 Wis. 2d 326, 337, 171 N.W.2d 370 (1969) (explaining that misrepresentation can be grounds for rescission).
¶ 100. In regard to emissions, the Common Council identified representations that it asserts were false: First, Cornelius said that there would be no harmful emissions because all of the toxins would be scrubbed out of the syngas and would not be present in the greywater that resulted from that scrubbing. However, contrary to its position before the Common Council, on April 22, 2011, less than two months after it had secured the conditional use permit, Oneida Seven submitted to the DNR an "air pollution control permit application and plans and specifications," in which Oneida Seven requested permission to emit toxic materials. Furthermore, on September 9, 2011, the DNR issued a permit for Oneida Seven's release of dioxins/furans,[7] cadmium, lead, mercury, hydrogen chloride, nitrous oxides, sulfur dioxide,[8] "fugitive ash," and formaldehyde. Limitations for those emissions were listed in the DNR permit.
*333 ¶ 101. Second, Cornelius said the facility would have "no smoke stacks." Both the pictures and the power point presentation provided to the Common Council on March 1, 2011, showed no stacks of any type. The representation that there would be no stacks supported the representation that no toxins would be dispersed into the air because all toxins would be washed out in the internal scrubbing process. However, on September 9, 2011, the DNR approved Oneida Seven's facility with 7 stacks (three 60 feet tall; three 40 feet tall; one 45 feet tall). Stacks were required by the DNR to disperse toxins that Oneida Seven's gasification facility will generate.[9]
¶ 102. Third, Cornelius repeatedly represented that this gasification facility would not be experimental because other gasification facilities used municipal solid waste as feedstock to generate syngas. He represented that a facility such as Oneida Seven was seeking was operational in California. He said, "[we] looked at it, the fact that it was operating in California, that it was permitted there. When we saw it, we knew it was a good system." As it turns out, there was no facility in the United States that used only municipal solid waste as the feedstock to generate syngas, which is the system Oneida Seven proposed.
¶ 103. On October 16, 2012, after gathering information subsequent to issuing the conditional use permit, the Common Council reviewed whether it had been misled by the representations Oneida Seven made, and Alderman Sladek moved to rescind the *334 conditional use permit based on misrepresentations. Most of his concerns were directed at the statements of Kevin Cornelius. He said that Cornelius's statements "were plain spoken statements, they contained no equivocation."[10] Alderman Sladek said that when Common Council members "asked about emission, and chemicals, and hazardous materials at this project, Cornelius provided false information" on subjects of "very high importance."[11]
¶ 104. Alderman Nicholson remembered "Mr. Cornelius stated that there was going to be a closed system, no emissions. Over months, all of [a] sudden there's going to be emissions, and it's not going to be a closed system."[12]
¶ 105. The record of the March 1, 2011 Common Council meeting shows that Alderman Nicholson's recollection is correct. First, Cornelius said, "there are no smoke stacks in it. For those of us here in Green Bay we know what that means. And so, obviously, the system has to be pretty safe, pretty clean for that to happen."
¶ 106. Cornelius was questioned further. He was asked and he answered:
Q. Is that true that that exhaust, because all of the treatments you're doing, with the metals and everything that is in there, that the exhaust is actually clean [?]
A. Yes.
*335 Q. And also, relative to wastewater, you do such a good cleaning job that the impurities and everything are taken out of this water before you discharge it[?]
A. Yeah. I've got some technical people (pointing behind him), but it's classified as graywater and just goes into the regular sewer system.
¶ 107. Alderman DeWane spoke next. He said, "The question here is whether we were told enough.... As time went on, things changed drastically. . . . [T]hings changed. Emissions changed. Stacks changed. ... I know that there is no other plant like this in the United States that burns this waste fuel."[13]
¶ 108. Substantial evidence in the record supports the Common Council's finding that it was misled when it issued the conditional use permit. A finding on whether Oneida Seven's representatives tried to be misleading is not necessary to support the Common Council's rescission of the conditional use permit. See Whipp v. Iverson, 43 Wis. 2d 166, 168, 168 N.W.2d 201 (1969) (explaining that "[rjescission of a contract in equity may be grounded on misrepresentations not intentionally made").
¶ 109. The record also shows that the Common Council's concerns for the health and safety of the people of Green Bay were addressed when Cornelius said, "there are no smoke stacks in it. For those of us here in Green Bay we know what that means. And so, obviously, the system has to be pretty safe, pretty clean for that to happen." Smoke stacks are used to expel toxic emissions from power plants, and Green Bay has ample experience with the emissions from power *336 plants and other facilities.[14] That there were no stacks for the proposed facility led to the Common Council's belief that the facility would not produce toxic emissions.
¶ 110. However, the Common Council's belief conflicts with the DNR's September 9, 2011 determination, wherein the DNR approved the facility if it had seven stacks — three that were 60 feet tall, three that were 40 feet tall, and one that was 45 feet tall. The DNR also listed the toxins that it anticipated would be emitted from the gasification facility — dioxins/furans, cadmium, lead, mercury, hydrogen chloride, nitrous oxides, sulfur dioxide, fugitive ash, and formaldehyde.
¶ 111. The DNR determination directly conflicts with Cornelius's testimony on March 1, 2011, where he answered a direct question in regard to emissions and toxins:
Q. Is that true that that exhaust, because all of the treatments you're doing, with the metals and everything that is in there, that the exhaust is actually clean [?]
*337 A. Yes.
Alderman DeWane was correct when he asserted on October 16, 2012, "As time went on, things changed drastically. . .. Emissions changed. Stacks changed." The DNR permit to emit certain levels of toxic chemicals is ample evidence of that change.
¶ 112. On certiorari review, the Common Council's finding that it was misled when it issued the conditional use permit is entitled to a presumption of correctness and validity, Driehaus, 317 Wis. 2d 734, ¶ 13. Furthermore, representations made when the Common Council issued the conditional use permit were such that the Common Council might reasonably rescind the conditional use permit upon recognition of Oneida Seven's misrepresentations. Cohn, 247 Wis. 2d 118, ¶ 25.
¶ 113. The majority opinion errs because it substitutes its view of the evidence for that of the Common Council. Clark, 186 Wis. 2d at 305. The majority opinion leads itself astray by searching the record for evidence to support Oneida Seven's position that it did not misrepresent when the conditional use permit was obtained.[15] However, whether there is evidence in the record that cuts against the Common Council's decision is not the test to apply in certiorari review. Rather, Oneida Seven must prove there is no reasonable view of the evidence that supports the action the Common Council took. Smith, 356 Wis. 2d 779, ¶ 22.
*338 ¶ 114. Oneida Seven has failed to meet its burden. In regard to a reasonable view of the evidence, it is interesting to note that in addition to this dissent, the circuit court also concluded that a reasonable view of the evidence supported the Common Council's decision to rescind the conditional use permit. The circuit court explained,
Cornelius said there are no smokestacks. Obviously, the system has to be pretty safe, pretty clean for that to happen. And in the CUP, as you and I both know, there's drawings that do not indicate any type of smokestack. . . .
The record at 21-122-23 shows a flat roof warehouse building, which I think would lead any reasonable person to believe there are no smokestacks because it's a completely closed loop process. . . . There would be nothing- — there would be nothing to associate a smokestack with.
... I'm not finding any evidence in this record that would allow a reasonable person to conclude that there would (a) be a smokestack or that (b) there would be a smokestack of this type of dimension, which is required by the DNR.. . .
. . . I'm having a difficult time in reconciling statements no stacks and then the DNR permit that says in order to build this facility you must have a 60-foot stack.
And Seven Generation knows they can't do that because someone advised them of the building code that says it can't be higher than 35 feet. . ..
Now we have no idea because there was never any evidence that I can find in the record that the redesigned building is going to work, has been tried and tested. Your client's earlier statement, this isn't new *339 technology, this is done in California, is now inconsistent with the plans that are moving forward, inconsistent with the plans that were originally approved by the City of Green Bay when they issued the CUP.
The circuit court's finding that the evidence reasonably supported the Common Council's decision to rescind the conditional use permit is uncontroverted by the majority opinion.
III. CONCLUSION
¶ 115. The majority opinion errs because it did not accord the Common Council's decision the presumption of correctness and validity that the law requires, Driehaus, 317 Wis. 2d 734, ¶ 13. It substituted its view of the evidence for that of the Common Council, contrary to law, Clark, 186 Wis. 2d at 305.
¶ 116. I conclude Oneida Seven has failed to meet its burden under certiorari review because a reasonable view of the presentations made March 1, 2011, when Oneida Seven obtained the conditional use permit, supports the Common Council's finding that it was misled. Material misrepresentations were made to the Common Council in regard to emissions during operation of the gasification facility and that such a facility was not experimental because solid municipal waste was being used as the feedstock in other gasification facilities. Therefore, I conclude that substantial evidence supports the Common Council's decision to rescind the conditional use permit. Accordingly, I would reverse the court of appeals decision, affirm the circuit court's affirmance of the Common Council decision, and respectfully dissent from the majority opinion.

 Feedstock is defined as "any renewable, biological material that can be used directly as a fuel, or converted to another form of fuel or energy product." Biomass Feedstocks, Office of Energy Efficiency & Renewable Energy, www.energy.gov/eere/bioenergy/biomass-feedstocks (last visited March 11, 2015).

 Gasification is the process of "convert [ing] a solid or liquid product from coal, petroleum residue, biomass, or other materials which are recovered for their energy or feedstock value into a synthesis gas [commonly referred to as syngas] composed primarily of carbon monoxide and hydrogen for direct use or subsequent chemical or physical conversion." 26 U.S.C. § 48B(c)(2).

 Questions About Your Community: Power Plant/Industry Smoke Stack Emissions, United States Environmental Protection Agency, www.epa.gov/regionl / communities / powerplant.html (last visited March 11, 2015).

 Majority op., e.g., ¶¶ 23, 47, 50-53.

 October 16, 2012 statement of Alderman Sladek.

 Rescission is an equitable remedy. Little v. Roundy's, Inc., 152 Wis. 2d 715, 722, 449 N.W.2d 78 (Ct. App. 1989).

 "Dioxins are highly toxic and can cause reproductive and developmental problems, damage the immune system, interfere with hormones and also cause cancer." Dioxins and Their Effects on Human Health, World Health Organization site www.who.int/mediacentre/factsheets/fs225/en (last visited March 11, 2015).

 Sulfur dioxide (S02) has a pungent and suffocating odor. Sulfur Dioxide, National Institutes of Health: Tox Town, http://toxtown.nlm.nih.gov/text version/chemicals.php?id=29, (last updated May 13, 2015). "Current scientific evidence links short-term exposures to S02, ranging from 5 minutes to 24 hours, with an array of adverse respiratory effects including bronchoconstriction and increased asthma symptoms. These effects are particularly important for *333 asthmatics." Environmental Protection Agency site www.epa.gov/oaqps001/sulfurdioxide/health.html (last visited March 11, 2015).

 Original DNR Air Permit, R.13, Bates Stamps OSGC286-327 (Sept. 9, 2011).

 October 16, 2012 statement of Alderman Sladek.

 Id.

 October 16, 2012 statement of Alderman Nicholson.

 October 16, 2012 statement of Alderman DeWane.

 "Each year, 48 million tons of toxic mercury alone goes up in the smoke from coal-burning power plants. Mercury is a potent, potentially deadly neurotoxin. Its worst effects are felt by the young, wrecking havoc with the development of children's nervous systems, affecting vision, hearing, speech and motor development. Even the unborn can be poisoned by the mercury in their mother's blood, and one out of 10 women in America has mercury levels high enough to affect the development of an unborn child. In Wisconsin, every single waterway in our state is listed as containing unsafe levels of mercury." Melanie G. Ramey, Op-Ed., More Work Needed to Protect Clean Air, The Cap Times, May 4, 2012, http://host.madison.com/news/opinion/column/melanie-gramey-more-work-needed-to-protect-clean-air/ article_d9bll6cc-954b-llel-ac67-001a4bcf887a.html.

 See, e.g., "[T]he documents from the DNR that are in the record support Cornelius's statement that the venturi scrubber would remove toxins from the syngas." Majority op., ¶ 66. "Mr. Cornelius's statements about the ash being put to beneficial uses are also supported by the DNR and DOE materials." Id., ¶ 69.