COURT OF APPEALS
DECISION
DATED AND FILED

July 8, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP478**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2019CV1095**

**IN COURT OF APPEALS
DISTRICT IV**

KATHLEEN S. COX,

PLAINTIFF-APPELLANT,

V.

CITY OF MADISON ZONING BOARD OF APPEALS,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Affirmed.*

Before Blanchard, Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Kathleen Cox appeals a circuit court order affirming, on certiorari review, the decision of the City of Madison Zoning Board of Appeals (the Board) denying her request for an area variance from a lakefront setback requirement. We conclude that the Board made an adequate record of its decision, based that decision on sufficient evidence, and did not act contrary to law. Accordingly, we affirm.

## BACKGROUND

¶2    The following facts are undisputed. Cox bought a residential property in the city of Madison with a plan to demolish the existing house and build a new one. The property is on the shore of Lake Mendota and includes a "wet boathouse": a boathouse built over excavated shoreline with lake water underneath, into which a boat can directly navigate. Before starting work on the house, Cox rebuilt the boathouse.

¶3    Under a Madison ordinance, a "lakefront yard setback" requirement establishes the minimum distance a house must be from the ordinary high water mark of the lake; for Cox's property, the setback is 123.8 feet. *See* MADISON, WIS., CODE OF ORDINANCES § 28.138(4)(a) (2021).[1]  When designing her new house, Cox believed that she should measure the setback from the property's natural shoreline. After she completed her design plans, Cox learned that a Wisconsin Department of Natural Resources (DNR) regulation required her to measure the setback from the indented shoreline created by the wet boathouse excavation. This represented a change of 14.6 feet, meaning that the planned

---

[1]  All references to the Madison ordinance are to the 2021 version.

house would now have to be 14.6 feet further inland than if the setback were measured from the natural shoreline. Accordingly, Cox applied to the Board for a lakefront setback variance of 14.6 feet.

¶4    The city zoning administrator submitted a report to the Board recommending approval of the variance request, "subject to further testimony and new information provided during the public hearing." The Board held a public hearing and considered testimony and evidence from the zoning administrator, Cox, her engineer, her architect, and her neighbors (the majority of whom were in opposition). The Board voted unanimously to deny the variance.

¶5    Cox filed a petition for certiorari review with the circuit court. The court affirmed the Board's denial of the variance request, and Cox appeals.

## DISCUSSION

### *Principles of Law and Standard of Review*

¶6    Variances operate as zoning ordinance "escape valve[s]," affording property owners "a means of obtaining relief from the strict enforcement of zoning restrictions where individual injustices may occasionally occur." *State ex rel. Ziervogel v. Washington Cnty. Bd. of Adjustment*, 2004 WI 23, ¶17, 269 Wis. 2d 549, 676 N.W.2d 401. The legislature has delegated to local zoning boards substantial discretion to grant variances in particular cases "where the literal application of zoning regulations would result in unnecessary hardship not justified by the underlying purposes of the ordinance in question." *Id.*, ¶19;

WIS. STAT. § 62.23(7)(e)7.b. (2019-20)[2]; MADISON, WIS., CODE OF ORDINANCES § 28.184(5)(a)4.[3]  Importantly, an unnecessary hardship "cannot be self-created"; it "must be based on conditions unique to the property rather than considerations personal to the property owner."  *Ziervogel*, 269 Wis. 2d 549, ¶20; § 62.23(7)(e)7.d.; MADISON ORD. § 28.184(5)(a)1., 5.

¶7      In the context of an area (as opposed to a use) variance,[4] an "unnecessary hardship" exists when "'compliance with the strict letter of the restrictions governing area, set backs, frontage, height, bulk or density would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome.'" *Ziervogel*, 269 Wis. 2d 549, ¶33 (quoting *Snyder v. Waukesha Cnty. Zoning Bd. of Adjustment*, 74 Wis. 2d 468, 475, 247 N.W.2d 98 (1976)); WIS. STAT. § 62.23(7)(e)7.a., d.; MADISON, WIS., CODE OF ORDINANCES § 28.184(5)(a)4. Whether this "standard is met in individual cases depends upon a consideration of the purpose of the zoning restriction in question, its effect on the property, and the effect of a [proposed] variance on the neighborhood and larger public interest." *Ziervogel*, 269 Wis. 2d 549, ¶33.  The property owner bears the burden of establishing unnecessary hardship.  *Id.*; § 62.23(7)(e)7.d.

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[3] In this section, we cite to provisions of WIS. STAT. § 62.23 and the Madison ordinance that encompass the same principles relating to the granting of zoning variances as those articulated in the case law quoted above.  The Madison ordinance is quoted, in pertinent part, at paragraph 13 of this opinion.

[4] A use variance allows the owner to use the property for an otherwise prohibited use, whereas an area variance provides an exception from physical requirements like setbacks and height limits. *State ex rel. Ziervogel v. Washington Cnty. Bd. of Adjustment*, 2004 WI 23, ¶21, 269 Wis. 2d 549, 676 N.W.2d 401.

¶8 A party aggrieved by a decision of a zoning board may seek certiorari review. WIS. STAT. § 62.23(7)(e)10. On appeal, we review the board's decision, not the circuit court's. *Oneida Seven Generations Corp. v. City of Green Bay*, 2015 WI 50, ¶42, 362 Wis. 2d 290, 865 N.W.2d 162. Our review is limited to: (1) whether the board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the board might reasonably make the order or determination in question based on the evidence. *Lamar Cent. Outdoor v. Board of Zoning Appeals of Milw.*, 2005 WI 117, ¶16, 284 Wis. 2d 1,700 N.W.2d 87; *Snyder*, 74 Wis. 2d at 475. We independently determine questions of law and jurisdiction, but in all other respects our review is deferential. *Ziervogel*, 269 Wis. 2d 549, ¶¶13-14; *see also Snyder*, 74 Wis. 2d at 475-76 ("'Whether a variance shall be authorized in a particular case is to be determined by the Board in the exercise of its discretion.'" (quoted source omitted)). We "may not substitute [our] discretion for that of the board," and we "accord a presumption of correctness and validity" to its decision. *Ziervogel*, 269 Wis. 2d 549, ¶¶13-14.

### *The Board Did Not Err in Denying Cox's Variance Request*

¶9 We first address and reject Cox's argument that the Board did not create a sufficient record of its decision. We then discuss why substantial evidence supports the Board's decision and why the Board did not make errors of law in reaching that decision.

<u>The Board made a sufficient record of its decision</u>

¶10 Cox argues that the Board erred in not sufficiently articulating the grounds for denying her variance request, thereby precluding meaningful certiorari

review. The rule is that, although board decisions need not be written, a board's reasoning must be evident from the certiorari record and must consist of more than "conclusory statements that the application does or does not satisfy the statutory criteria." *Lamar Cent. Outdoor*, 284 Wis. 2d 1, ¶¶31-32. Unless a board "express[es], on the record, its reasoning *why* an application does or does not meet the statutory criteria….[,] [i]t is impossible for [courts] to meaningfully review a board's decision, and the value of certiorari review becomes worthless." *Id.*, ¶32. A board's failure to provide reasons for its decision "amounts to a violation of the third prong of certiorari review." *Id.*, ¶26

¶11     We have reviewed the transcript of the Board proceedings, and we discern no basis for Cox's assertion that the Board's decision was cursory or insufficiently articulated. As we discuss below, the Board was required to analyze six factors under the Madison ordinance. It addressed and made findings on each in turn, determining that Cox met some standards and not others. Because the Board determined that Cox did not meet all standards for granting the variance, it denied her request. The record is sufficiently detailed to enable us to analyze that decision.

Substantial evidence supports the Board's decision

¶12     We construe Cox to argue that the evidence did not support the Board's conclusion that she failed to meet all of the approval standards under the Madison ordinance for granting an area variance. We review the sufficiency of the evidence under the "substantial evidence" test, meaning that we will affirm when there was "credible, relevant, and probative evidence" before the board "upon which reasonable persons could rely to reach [that] decision"—even when

the evidence could also support a contrary determination. ***Sills v. Walworth Cnty. Land Mgmt. Comm.***, 2002 WI App 111, ¶11, 254 Wis. 2d 538, 648 N.W.2d 878.

¶13      The Madison variance ordinance states, in pertinent part:

> The Zoning Board of Appeals shall not grant a variance unless it finds that the following conditions are present:
>
> 1.   There are conditions unique to the property of the applicant that do not apply generally to other properties in the district.
>
> 2.   The variance is not contrary to the spirit, purpose, and intent of the regulations in the zoning district and is not contrary to the public interest.
>
> ….
>
> [3.] For an area variance, compliance with the strict letter of the ordinance would unreasonably prevent use of the property for a permitted purpose or would render compliance with the ordinance unnecessarily burdensome.
>
> [4.] The alleged difficulty or hardship is created by the terms of the ordinance rather than by a person who has a present interest in the property.
>
> [5.] The proposed variance shall not create substantial detriment to adjacent property.
>
> [6.] The proposed variance shall be compatible with the character of the immediate neighborhood.

MADISON, WIS., CODE OF ORDINANCES § 28.184(5)(a).[5]

---

[5] Cox does not dispute that the six pertinent approval standards comply with the legal standards for granting a zoning variance articulated in the case law discussed above. *See* MADISON, WIS., CODE OF ORDINANCES § 28.184(5)(a); *see generally **Ziervogel***, 269 Wis. 2d 549, ¶¶17-34.

(continued)

¶14 Under this ordinance, Cox had to meet all six standards before the Board could grant the variance. Therefore, we will focus on whether substantial evidence supports the Board's conclusions on those standards it determined she did *not* meet: standards (3) and (4).[6] In this discussion we refer generally to "the setback requirement"; this term encompasses the lakefront yard setback requirement under the Madison ordinance together with the DNR requirement that Cox's setback be measured from the excavated shoreline of her wet boathouse.

¶15 As quoted above, standard (3) concerns whether compliance with the setback requirement "would unreasonably prevent use of the property" or be "unnecessarily burdensome." *See* MADISON, WIS., CODE OF ORDINANCES § 28.184(5)(a)4. As we have explained, the evidence before the Board showed that Cox, only after settling on a design for her new house, learned that she had measured the lakefront yard setback from the wrong point under applicable DNR standards: the natural shoreline rather than the excavated shoreline created by the wet boathouse. This prompted Cox to seek a variance. In the Board's view, this series of events reflected a failure by Cox to give any real "consideration [as to how] to build a code-compliant structure." One Board member pointed out, "[W]e

For ease of reading, and in keeping with the Board's discussion, we have renumbered some of these standards so that we may refer to them as standards (1) through (6).

[6] The parties dispute whether Cox meets other standards of the Madison ordinance § 28.184(5)(a). For example, Cox argues that she meets standard (2)—that her "variance is not contrary to the spirit, purpose, and intent of the regulations ... [or] the public interest"—because her house will be in line with her neighbors' houses and will not block any views. Similarly, Cox implies that she meets standards (5) and (6) because the location of her house will not negatively affect adjacent properties or the character of the neighborhood. For its part, the Board concedes that standards (5) and (6) are likely met but questions whether Cox meets standard (2). We need not decide these points because we conclude that the Board did not err in determining that Cox did not meet standards (3) and (4), and she had to meet all six. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

didn't hear anything from the applicant in how [she] tried to minimize the impact … into the setback." Another member acknowledged that "redesigning is not fun, especially when you really have a house that you like, and you spent a lot of time designing it," but expressed the view that those considerations alone did not create an unnecessary burden.

¶16 There is substantial evidence to support the Board's conclusion that Cox did not meet her burden on this third standard. Cox testified that by the time she realized her error, "a lot of time, effort, and money" had gone into the current design. Moreover, she explained, if any change were made, "I'm not going to be able to get the kind of house that I want there" (as designed, one of the two decks would have protruded into the setback area). But neither Cox, nor her engineer, nor her architect explained why it would have been overly burdensome to revise the plans and build a house or deck slightly different than the one Cox desired. Without additional evidence as to how the setback requirement otherwise affected Cox or her use of the property, the Board had a sufficient evidentiary basis to conclude, as one Board member stated, that Cox was not "unnecessarily burden[ed]" merely because she was "not … able to build everything that [she] want[s] within the setback."

¶17 Relatedly, the Board found that Cox did not meet standard (4) because it was her acts and omissions—and not "the terms of" the setback requirement—that had created "[t]he alleged difficulty or hardship." *See* MADISON, WIS., CODE OF ORDINANCES § 28.184(5)(a)5. The Board did not view "the late surfacing of information" as itself creating a hardship, because it was Cox's burden to know and follow the law. One member contrasted Cox's situation with a hardship truly caused by an ordinance:

[L]et's say they were at this stage in the project, and the day before construction, the council amends the code on them. Then it is precisely the ordinance causing the hardship. The only thing I could think of is it was a property on … State Street … many years earlier, they had built a code-compliant elevator shaft for a future addition. The code had … changed on them. The safety regs and how big an elevator [could be] changed on them, and therefore, they had to build into the variance. That was a situation where it was a change in the code …. [A]nd so they had done everything to be compliant, but for a legal change, and to me, that's the distinction.

¶18    Substantial evidence supports this conclusion as well. There was no dispute before the Board that Cox appreciated the error in her setback calculation only after she had designed, as Cox put it, "the kind of house that I want there." The setback requirement as measured by the DNR standard never changed—it always required Cox to calculate her setback from the same location. Thus, the Board had a sufficient basis to conclude that Cox herself created the "alleged difficulty or hardship"—the fact that the setback requirement prohibited her design.[7]

The Board applied the correct legal standards

¶19    Cox argues that the Board made three errors of law. First, she contends that the Board "applied a higher burden on the approval standards (3) and (4) … than is required by law because Cox plans to demolish and rebuild her

---

[7] Cox suggests that the DNR regulation requiring the setback to be measured from the excavated shoreline created for the wet boathouse is unfair, because it prohibits her from building as close to the natural shoreline as her neighbors without wet boathouses may build. But this argument, regardless of its merit, has no bearing on whether Cox created her own hardship. And although Cox occasionally implies otherwise, the "hardship" she faces is *not* simply that she must measure the setback from the excavated shoreline. This is not a hardship, but merely a circumstance dictated by the terms of the regulation itself. *See Ziervogel*, 269 Wis. 2d 549, ¶17 (variances operate to relieve uniquely circumstanced property owners from the effect of generally applicable regulations).

10

home." Thus, she argues, her "variance request was doomed from the start." In Cox's view, the Board determined that it would not apply the usual standards (or would apply them more rigorously) because she was replacing the house (also referred to as a "clean slate").

¶20 We find no support in the record for this position. In considering whether compliance was unnecessarily burdensome and whether Cox created her own hardship, Board members noted that it is particularly difficult for "clean-slate" variance requests to win Board approval. But these were not incorrect statements of law. Rather, members were simply acknowledging that "complete rebuilds [are] really starting with a blank slate," so "there aren't the same considerations [such as] needing to preserve a foundation, a wall, [or] most of the residence." These comments reflect the reality that "clean-slate" builders likely have greater flexibility to design a code-compliant structure, rather than seek a variance, so they face a "particular[] … challenge" before the Board. These comments do not, as Cox argues, indicate that the Board ignored the Madison ordinance or created its own rules for granting area variances.

¶21 Second, Cox argues that the Board based its decision on the planned *size* of the house (over ten thousand square feet) and not on its proposed location, thereby usurping the role of the city Plan Commission, the only proper forum for consideration of the house's size. But Cox again reaches this conclusion by selectively quoting Board member comments, while ignoring the larger context. It is true that, in discussing standard (5) ("[t]he proposed variance shall not create substantial detriment to adjacent property"), one Board member noted public opposition to the project's size and appearance, and another called this input "valuable." But these comments do not seem to have been determinative even of that standard: although somewhat unclear from the transcript, the majority of

Board members appeared to believe that any "detriment" to other properties was not "substantial."

¶22 Moreover, the transcript, considered as a whole, shows that the Board did not directly consider the proposed size of the house in determining if Cox met standards (3) and (4). The possible exception is that in discussing standard (3)—whether compliance with the setback requirement would be "unnecessarily burdensome"—one Board member mentioned the size and complexity of the project:

> [W]e've had [this] discussion [with other applicants] on small portions of the kitchen addition or others … as opposed to what we have here, which are multiple decks of fair size, outdoor kitchen, two different sun porches on the second level. Is it unreasonable that you can't do all that? It think it's part of the standard that we have to apply. And I would struggle to find that not being able to build everything that they want within the setback is, it's unreasonable to say you can't do that.

This comment does not indicate to us that the member rejected the project solely because of its size. Rather, the member expressed the view that applicants do not meet standard (3) solely because they are unable to build the exact houses they would like. In any case, to the extent the size of the house *partially* informed any members' decision-making, this was permissible. As we stated in ***Driehaus v. Walworth County***, 2009 WI App 63, ¶17, 317 Wis. 2d 734, 767 N.W.2d 343, "an area variance cannot be decided in a vacuum." Thus, a board may consider extraneous factors so long as these do not "overwhelm[] all other considerations in the analysis." ***Id.***, ¶¶17-18 (quoting ***Ziervogel***, 269 Wis. 2d 549, ¶28). Here, it is evident that the Board primarily, if not exclusively, focused on the circumstances discussed above: that Cox had not shown that compliance would be overly burdensome and that Cox had created her own hardship.

¶23 Finally, Cox argues that the Board improperly rejected, or did not sufficiently consider, the zoning administrator's report, which as we have noted recommended approval "subject to further testimony and new information provided during the public hearing." Cox admits that the Board was not "bound to adopt" the tentative opinion of the administrator, but she calls the report "critical evidence" that, in her view, was not contradicted by any "new information." We disagree both with Cox's premise—that the Board needed to articulate some "reasonable basis to disregard" the report's conditional approval—and her characterization of the Board proceedings. The "new information" presented at the hearing was additional evidence on standards (3) and (4)—specifically, that Cox failed to show that compliance with the ordinance was unnecessarily burdensome, and that any hardship was "self-created" and based on "considerations personal to the property owner." *See Ziervogel*, 269 Wis. 2d 549, ¶20. The Board reasonably considered this additional evidence in its own independent analysis of the zoning standards.

¶24 In sum, the Board's decision was sufficiently detailed for purposes of certiorari review, was based on substantial evidence, and contained no errors of law. *See Lamar Cent. Outdoor*, 284 Wis. 2d 1, ¶16; *Sills*, 254 Wis. 2d 538, ¶11. Cox failed to rebut the "presumption of correctness and validity" attaching to the Board's determination that she did not satisfy standards (3) and (4) of the Madison variance ordinance. *See Ziervogel*, 269 Wis. 2d 549, ¶14. Thus, we do not have a basis to reverse the Board's exercise of its discretion in denying Cox's variance application. We therefore affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.