COURT OF APPEALS
DECISION
DATED AND FILED

May 21, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP786**

Cir. Ct. No. **2022CV218**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN EX REL. LAURA SUTTON AND RYAN SUTTON,

   PETITIONERS-RESPONDENTS,

 V.

BARRON COUNTY BOARD OF ADJUSTMENT,

   RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Barron County: JAMES M. PETERSON, Judge. *Affirmed in part; reversed in part and cause remanded with directions.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   The Barron County Board of Adjustment appeals a circuit court order that reversed its decision denying Laura and Ryan Sutton's request for an area variance.   On certiorari review, the court concluded that the Board had failed to apply the proper legal standard and that the Board's denial of the Suttons' request was arbitrary.   The court therefore reversed the Board's decision and ordered that "the variance request is now granted[.]"

¶2    We agree with the circuit court that the Board failed to apply the proper legal standard and that its denial of the Suttons' variance request was arbitrary.   We therefore affirm the court's decision in part.   We conclude, however, that the court erred by ordering the variance request granted.   The court should have instead remanded the matter to the Board to apply the correct legal standard and to provide an adequate explanation for its decision.   We therefore reverse the court's order in part and remand with directions for the court to remand this matter to the Board for additional proceedings consistent with this opinion.

## BACKGROUND

¶3    The Suttons own a 1.1-acre property located on Highway 48 in Barron County, Wisconsin, which they purchased in 2009.   The property includes a home, which was built in the early 1900s, and a detached garage or shed, which was built in the 1970s.[1]   The western edge of the Suttons' property borders Highway 48, while the eastern edge of their property has frontage on Rice Lake.

---

[1] The Suttons refer to the 1970s structure as a shed.  Some documents in the record, however, refer to the structure as a garage.  At the hearing before the Board, Ryan Sutton explained that the Suttons had previously parked vehicles in the 1970s structure, but they are no longer able to do so because of problems with the structure's concrete slab.  The Suttons contend that, at present, they use the structure for storage only.  Throughout the remainder of this opinion, we refer to this structure as "the detached shed."

¶4    The Barron County Land Use Ordinance ("the Ordinance") designates Highway 48 as a Class B highway. BARRON CNTY., WIS., ORDINANCES § 17.13(3)(b)2. (May 2023), https://www.co.barron.wi.us/misc%20docs/land%20use%20ordinance.pdf. The Ordinance requires a setback of seventy-five feet from the right-of-way of a Class B highway or 108 feet from the highway's centerline, whichever is greater. *Id.*, § 17.13(3)(b)2.a. The Suttons' property is currently in compliance with the Ordinance, as their residence is located seventy-six feet from Highway 48's right-of-way and the detached shed is located farther from the right-of-way. Because the Suttons' property is located on Rice Lake, it is also subject to shoreline setback requirements. It is undisputed that the property is currently in compliance with the applicable shoreline setback.

¶5    The Suttons would like to construct an "attached garage addition to [the] west end of [their] existing home" with "[second] story living space above." To assist the reader, we include a diagram showing the location of the proposed addition. On the diagram, the existing residence and detached shed are colored green, and the proposed addition is colored pink.



¶6      The Suttons' proposed addition would be forty-two feet from the right-of-way of Highway 48 and, accordingly, would not be compliant with the Ordinance.  Consequently, on June 20, 2022, the Suttons submitted an application to the Barron County Zoning Office, seeking a variance from the Ordinance's seventy-five-foot setback requirement.[2]  The application asserted that the proposed addition is necessary because the Suttons are not able to park vehicles in the detached shed and they have "[s]ecurity [c]oncerns" about parking their vehicles outside "due to the proximity to surrounding businesses."

---

[2]  The record shows that on June 13, 2022, the Town of Rice Lake reviewed the Suttons' request for a variance and adopted a resolution "recommending approval of said variance."

¶7 The Suttons' application further asserted that an unnecessary hardship would exist absent a variance because there are "no other feasible or compliant locations to build on the property." In support of this assertion, the Suttons alleged that four "[p]hysical [l]imitations" of their property prevent them from building an addition in other locations. First, the Suttons noted that any addition must comply with shoreline setback requirements. Second, the Suttons alleged that "[t]he primary drainage corridor" on their property "lies between the house and the [detached shed]" and that "[i]ssues with the drainage corridor previously resulted in water in the basement of the residence[.]" Third, the Suttons asserted that their existing well, which is located inside their residence, is "nearing the end of its lifecycle" and that a new well "must be in compliance with setbacks and additional restrictions relating to the proximity of the existing septic field." Fourth, the Suttons contended that "[a]ll other compliant [building sites would] cut off all access to the back two-thirds … of the property, including lawn mower and emergency vehicles."

¶8 Finally, the Suttons' application addressed the public interest and stated that the purpose of the Ordinance's setback requirement is "to allow for future expansion and to ensure public safety." The Suttons asserted that granting their variance request would not interfere with this purpose because the Wisconsin Department of Transportation has confirmed that there are "no current plans for future expansion" of Highway 48 within one-half mile of the Suttons' property. The Suttons also argued that their proposed addition would leave room for emergency vehicles and utility workers to access Highway 48 and would not "create an obstruction for traffic."

¶9 The variance application form required the Suttons to describe any "alternatives to [their] proposal" that complied with the Ordinance and to explain

why they had rejected those compliant alternatives. In response, the Suttons acknowledged that a compliant alternative to their proposed plan would be to "[c]onstruct an attached garage onto the [s]outh side of the house"—that is, in the area between the house and the detached shed. The Suttons asserted that they had rejected this alternative because "the primary drainage corridor located between the existing house and the [detached shed] would be cut off" and because they "would not be able to access the back two-thirds … of the property, due to space limitations between the existing house and the [detached shed]."

¶10 The five-member Board held a hearing on the Suttons' variance application on July 25, 2022. No members of the public appeared at the hearing to object to the Suttons' application.[3] During the hearing, the Board took testimony from the Suttons and also considered statements made by Marshall Black, a representative from the Barron County Zoning Office. In particular, Black presented a "Staff Report" from the zoning office, which was also provided to the Board in writing.

¶11 The Staff Report noted that "[w]hen applying for a variance, the applicant must meet the three criteria for approval; Unique Physical Limitations of the property, Unnecessary Hardship and Public Interest." The Staff Report explained that unique physical limitations of a property are "conditions of the property that prevent compliance with the setback standards … such as steep slopes and lot size." The Staff Report concluded that the Suttons' "existing dwelling and accessory structure are not 'physical limitations of the property,' but

---

[3] The Board received correspondence stating that the Wisconsin Department of Natural Resources had "no comments" regarding the Suttons' application.

rather self-imposed conditions of previous owners." The Staff Report also concluded that there was "no physical limitation associated with [the Suttons' property] being a lake lot" because "[t]he depth of this property, from [the] highway right-of-way to the lakeshore, is approximately 390 feet" and "the existing dwelling [is] located approximately 275 feet from the [ordinary high water mark]" of the lake. The Staff Report further opined that although setback requirements "may limit the location of a new well to the west side of the dwelling," "the future location of a new well is not a unique physical limitation of the property."

¶12 The Staff Report next stated that unnecessary hardship exists "when compliance would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restraints unnecessar[il]y burdensome." The Staff Report noted that while the Suttons "have indicated that there are no other feasible or compliant locations to build on the property," "an alternative has been submitted that would meet all setbacks and be in compliance with the ordinance."

¶13 Finally, addressing the public interest, the Staff Report stated:

> Public interest relates to the effects a variance may have on this property and Barron County as a whole. This variance request is a proposed addition onto an existing dwelling that is in compliance with all setback standards. With the property lacking unique physical limitations, and the applicants having provided an alternative location that would maintain compliance, granting of this variance would not meet the intent of the ordinance.

¶14 During the hearing before the Board, Ryan Sutton testified that building an addition on the south side of the existing residence would block the property's primary drainage corridor, which currently runs between the house and

7

the detached shed. In response, Black—the zoning office representative—opined that if an addition were constructed in that location, various steps could be taken to mitigate any drainage issues.

¶15 While Black was speaking to the Board, a Board member noted that the house to the north of the Suttons' property appeared to be in compliance with the Ordinance's setback requirement, and she asked Black whether the residence to the south was also in compliance. Black responded that the house to the south was "a lot further back." The same Board member then stated, "So then this would be sort of a new precedence or whatever, a new—I mean, their request would be sticking out to the west further than what the other houses that are existing are." Black responded, "Yes. It appears like at least, you know, with the exception of obviously this to the north, but going off to the west, that portion of Highway 48, the neighboring properties are in compliance[.]" Laura Sutton testified, however, that many nearby properties on Highway 48 are not in compliance. She asserted, "[W]hat we're requesting isn't anything different than what others on down the street are also … doing."

¶16 Following the close of testimony, members of the Board discussed the Suttons' application on the record. One Board member immediately moved to deny the variance "because of the fact that there's an alternative site plan." Another Board member then commented that he had been "searching for a way to try to figure out how to actually approve this." He noted that many of the properties near the Suttons' home are not in compliance with the Ordinance's setback requirement. Nevertheless, he concluded the Suttons had not shown why the Board should grant a variance because there was "an alternate option."

¶17    The same Board member who had questioned Black about the neighboring properties commented that she was "hung up on … the harm to the public."   She also acknowledged the Suttons' concerns about the alternative location for the addition being "right through that drainage path."   However, she credited Black's opinion that the property's drainage could be "reconfigured," and she therefore concluded that the Suttons had failed to show a "hardship."

¶18    The Board subsequently voted four to one to deny the Suttons' request for a variance.  In its written decision, the Board stated that the request

> does not meet all three of the following tests:
>
> A.  Unnecessary hardship is not present since strict application of the terms of the Barron County Land Use Ordinance would not unreasonably prevent the owner from using the property for a permitted purpose or render conformity with such restrictions unnecessarily burdensome because there is adequate location for a conforming dwelling addition that allows for reasonable use of the property.
>
> B.  The hardship is not due to physical limitations of the property but rather the circumstances of the applicant.
>
> C.  The variance would be contrary to the public interest and would not observe the purpose of the Ordinance and do justice.

¶19    The Suttons then filed the instant lawsuit, seeking certiorari review of the Board's decision denying their variance request.  Following briefing by the parties, the circuit court reversed the Board's decision.  The court concluded that the Board had failed to apply the correct legal standard and that its decision to deny the variance was arbitrary.

¶20    During its oral ruling, the circuit court explained that our supreme court set forth the legal standard for the issuance of an area variance in *State ex*

9

*rel. Ziervogel v. Washington County Board of Adjustment*, 2004 WI 23, 269 Wis. 2d 549, 676 N.W.2d 401, and *State v. Waushara County Board of Adjustment*, 2004 WI 56, 271 Wis. 2d 547, 679 N.W.2d 514. The court stated that these cases require a board of adjustment to, among other things, "focus on the purpose of the ordinance in question when deciding whether to grant the variance" and balance "individual rights" against "the public interest in land-use regulations." The court then explained:

> [W]hen you look at whether this Board applied the correct legal theory, in reviewing the record, the transcript, their decision, I found absolutely nothing about the Board focusing on the purpose of the ordinance and balancing the public interest against the private interest of the Suttons. And, I mean, it's just devoid.
>
> I mean, I think there was maybe one of the members … [who] said something about, well, the reason is that it would stick out a ways—I think referring to the building. That was about it.

The court later reiterated, "I didn't hear anything about how this would harm the public interest whatsoever other than the one comment, oh, well, this would stick out."

¶21     The circuit court also stated that the Board's written decision

> says … just in a conclusionary fashion … [that] the variance would be contrary to the public interest and would not observe the purpose of the ordinance and do justice. And—but there's nothing—there was not a single thing, a discussion or the decision or the arguments or discussion by the Members of the Board as to why this would be contrary to the public interest, other than just, you know, it's a variance. And maybe they [are] predisposed that they didn't want to grant variances. It seems to me that in a sense, just saying that without going through the analysis is an epitome of an arbitrary decision.

¶22 The circuit court therefore reversed the Board's decision and ordered that the Suttons' variance request "is now granted as originally applied for on July 25, 2022." The court subsequently stayed its decision pending the resolution of this appeal.

## DISCUSSION

¶23 "A person aggrieved by the issuance or denial of a zoning variance may commence an action in circuit court seeking the remedy available by certiorari[.]" *Ziervogel*, 269 Wis. 2d 549, ¶13. On appeal, we review the Board's decision, not the circuit court's. *See **Oneida Seven Generations Corp. v. City of Green Bay***, 2015 WI 50, ¶42, 362 Wis. 2d 290, 865 N.W.2d 162. In doing so, we must accord a presumption of correctness and validity to the Board's decision, and we may not substitute our discretion for that of the Board. *See **Ziervogel***, 269 Wis. 2d 549, ¶13. Our review is limited to: (1) whether the Board kept within its jurisdiction; (2) whether the Board proceeded on a correct theory of law; (3) whether the Board's action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the Board might reasonably make the order or determination in question based on the evidence. *See **id.***, ¶14.

¶24 Here, the circuit court reversed the Board's decision on the grounds that the Board had proceeded on an incorrect theory of law and that its decision was arbitrary. Whether the Board applied an incorrect theory of law or made an arbitrary decision are questions of law that we review independently. *See **Driehaus v. Walworth County***, 2009 WI App 63, ¶13, 317 Wis. 2d 734, 767 N.W.2d 343.

¶25    A county board of adjustment has the power to grant a variance "that will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." WIS. STAT. § 59.694(7)(c)2. (2021-22).[4]  In *Ziervogel*, our supreme court "reaffirm[ed]" that the standard for unnecessary hardship set forth in *Snyder v. Waukesha County Zoning Board of Adjustment*, 74 Wis. 2d 468, 247 N.W.2d 98 (1976), applies when a property owner requests an area variance—as the Suttons did in this case—as opposed to a use variance.[5]  *See Ziervogel*, 269 Wis. 2d 549, ¶7.  Under the *Snyder* standard, to determine whether an unnecessary hardship exists, the question is "[w]hether compliance with the strict letter of the restrictions governing area, set backs, frontage, height, bulk or density would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome." *Ziervogel*, 269 Wis. 2d 549, ¶7 (alteration in original; quoting *Snyder*, 74 Wis. 2d at 475); *see also* § 59.694(7)(c)3.

¶26    The burden of proving unnecessary hardship rests with the property owner.  *Ziervogel*, 269 Wis. 2d 549, ¶20.  The hardship must be based on conditions unique to the property rather than considerations personal to the property owner, and it may not be self-created.  *Id.*  In addition, "variance requests

---

[4] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[5] An area variance is "a modification to a dimensional, physical, or locational requirement such as the setback, frontage, height, bulk, or density restriction for a structure[.]" WIS. STAT. § 59.694(7)(c)1.a.  A use variance is "an authorization by the board of adjustment … for the use of land for a purpose that is otherwise not allowed or is prohibited by the applicable zoning ordinance." Sec. 59.694(7)(c)1.b.

are always evaluated in light of the purpose of the zoning ordinance and the public interests at stake." *Id.*, ¶33. Accordingly, determining whether a property owner has met the standard for unnecessary hardship "depends upon a consideration of the purpose of the zoning restriction in question, its effect on the property, and the effect of a variance on the neighborhood and larger public interest." *Id.*

¶27 As discussed above, in this case, the circuit court concluded that the Board had proceeded on an incorrect theory of law when analyzing the Suttons' variance request because there was "nothing" in the record showing that the Board had "focus[ed] on the purpose of the ordinance and balanc[ed] the public interest against the private interest of the Suttons." The court noted that during the hearing before the Board, there was no discussion "about how this would harm the public interest whatsoever other than the one comment, oh, well, this would stick out." The court also observed that while the Board's written decision stated that "the variance would be contrary to the public interest and would not observe the purpose of the ordinance," the Board had provided no explanation in support of that conclusion.

¶28 On appeal, the Board argues that it was the circuit court that failed to apply the correct legal standard. According to the Board, there is no requirement that a board of adjustment "engage in a balancing of public interests against private interests" when deciding whether to grant an area variance. Instead, the Board asserts that it is required "to consider the facts of the individual case in light of the purpose of the ordinance to determine whether unnecessary hardship exists," and "[o]nce the issue of unnecessary hardship has been determined, the board is then authorized by [WIS. STAT. §] 59.694(7)(c)2[.] to grant a variance from the terms of the ordinance that will not be contrary to the public interest." Stated differently, the Board argues that consideration of the public interest does

13

not come into play until after it has determined that a property owner has demonstrated unnecessary hardship.

¶29    The Board's argument in this regard is contrary to our supreme court's decision in ***Ziervogel***.  There, the court expressly stated that "whether the ***Snyder*** [unnecessary hardship] standard is met in individual cases depends upon a consideration of the purpose of the zoning restriction in question, its effect on the property, *and the effect of a variance on the neighborhood and larger public interest*."  ***Ziervogel***, 269 Wis. 2d 549, ¶33 (emphasis added).  The meaning of this statement is plain: in determining whether a property owner has established unnecessary hardship, one of the factors that a board must consider is "the effect of a variance on the neighborhood and larger public interest."[6]  *See **id.***

¶30    We further agree with the circuit court that neither the Board's oral discussion of the Suttons' variance request nor the Board's written decision shows that the Board considered the purpose of the Ordinance's setback requirement or the effect that granting a variance would have on the larger public interest.  During its oral discussion of the variance application, the Board focused almost exclusively on the existence of an alternative location for the Suttons' proposed

---

[6] In its reply brief, the Board attempts to advance an alternative interpretation of the above-quoted sentence from ***Ziervogel v. Washington County Board of Adjustment***, 2004 WI 23, 269 Wis. 2d 549, 676 N.W.2d 401.  Specifically, the Board argues that we should "break[] … down" this sentence and interpret the first two list items—i.e., "a consideration of the purpose of the zoning restriction in question" and "its effect on the property"—as applying to a determination of whether unnecessary hardship exists, and we should interpret the third list item—i.e., "the effect of a variance on the neighborhood and larger public interest"—as applying only after a board has determined that an unnecessary hardship is present.  *See **id.***, ¶33.  The sentence's structure does not support this interpretation.  The sentence lists three factors that a determination of unnecessary hardship "depends upon."  *See **id.***  There is nothing to suggest that the third factor should be treated differently from the first two factors, simply because the third factor is listed last.

addition.[7]  Although one Board member noted that the addition "would be sticking out to the west further than" the neighboring homes and later stated that she was "hung up on … the harm to the public," neither she nor any other Board member expressly addressed the Ordinance's purpose or explained how granting a variance would affect the public interest.

¶31   In its written decision, the Board merely stated that granting the variance "would be contrary to the public interest and would not observe the purpose of the Ordinance and do justice."  However, the Board did not provide any explanation for those conclusory statements, and under the circumstances, they do not show that the Board actually considered the public interest and the Ordinance's purpose when making its decision.

¶32   In an attempt to remedy these deficiencies, the Board directs us to the Staff Report.  Because the Staff Report was made part of the record, the Board asserts that it necessarily "took into consideration the portion of the Staff Report regarding [the] Public Interest" when making its decision.  The Board makes a similar argument regarding the purpose of the Ordinance, asserting that because the Ordinance's statement of purpose was included as part of the record, the Board must have considered the Ordinance's purpose.  These arguments are unavailing. The fact that evidence relevant to a particular issue is present in the record does

---

[7] On appeal, the Board suggests that its decision should be affirmed because it correctly determined that there is a compliant alternative location for the Suttons' proposed addition.  We take no position on the appropriateness of the Board's determination regarding the existence of a compliant alternative location.  For purposes of our resolution of this appeal, it is sufficient for us to conclude that the Board applied an incorrect theory of law and that its decision was arbitrary, both of which conclusions justified the circuit court's reversal of the Board's decision.  On remand, the Board must focus on the purpose of the Ordinance and balance the public interest against the private interest of the Suttons.

not show that the Board actually considered that evidence or issue before reaching its decision.

¶33 The Board also asserts that based on the evidence presented, it was "clear … that the property presented no unique limitations that were not self-created and that [the Suttons] themselves had submitted an alternative location which did not require a variance to fully comply with all setback requirements under the ordinance[.]" The Board contends that, under these circumstances, "it was clear that the granting of a variance would be contrary to the public interest and would not observe the purpose of the ordinance." These assertions do not change the fact that neither the Board's oral discussion nor its written decision shows that the Board actually considered the public interest or the Ordinance's purpose when making its decision. In other words, even if the Board found that the limitations on the Sutton's use of the property were self-created and an alterative location was viable, the Board failed to weigh those property limitations and the Sutton's issues with the alternative location against the effect of the variance on the neighborhood and the public interest in maintaining the highway setback.

¶34 For similar reasons, we also agree with the circuit court that the Board's decision to deny the variance request was arbitrary. A decision is arbitrary "if it is unreasonable or without a rational basis." *Snyder*, 74 Wis. 2d at 476. A board's decision must contain the reasons for the action taken, and it may not simply parrot the language of the applicable statute. *Lamar Cent. Outdoor, Inc. v. Board of Zoning Appeals of City of Milwaukee*, 2005 WI 117, ¶28, 284 Wis. 2d 1, 700 N.W.2d 87.

¶35 Again, when determining whether the Suttons had proved unnecessary hardship, the Board was required to consider "the effect of a variance on the neighborhood and larger public interest." *See Ziervogel*, 269 Wis. 2d 549, ¶33. As the circuit court correctly noted, although the Board's written decision stated that the requested variance would be contrary to the public interest, there was nothing in "the decision or the arguments or discussion by the Members of the Board as to why [the variance] would be contrary to the public interest[.]" We agree with the court that simply stating that the variance would be contrary to the public interest, without providing any analysis in support of that conclusion, was "an epitome of an arbitrary decision."

¶36 We therefore affirm the circuit court's decision in part, to the extent the court concluded that the Board's decision should be reversed. We conclude, however, that the court erred by ordering that "the variance request is now granted[.]" After determining that the Board had proceeded on an incorrect theory of law and that its decision was arbitrary, the court should have remanded the matter back to the Board to apply the correct legal standard and to provide an adequate explanation for its decision.[8] *See, e.g.*, *Lamar Cent. Outdoor, Inc.*, 284 Wis. 2d 1, ¶4 (remanding a case to a board of zoning appeals to apply the correct legal standard and adequately explain the reasons for its decision). We therefore reverse the court's decision in part and remand with directions for the court to

---

[8] Notably, the Board argued in its brief-in-chief that after the circuit court concluded that the Board had proceeded on an incorrect theory of law, the court "should have remanded the matter back to the Board" for it to apply the correct legal standard. The Suttons failed to respond to this argument in their response brief, and we therefore deem the point conceded. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

remand this matter to the Board for further proceedings consistent with this opinion.

¶37     No costs to either party.

*By the Court.*—Order affirmed in part, reversed in part, and cause remanded with directions.

This opinion will not be published.     *See* WIS. STAT. RULE 809.23(1)(b)5.